IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAUL ROSS, JEANETTE J. ANDREWS,      )
and ARTRALIA B. ANDREWS,             )
individually and on behalf of all    )
others similarly situated,           )
                                     )
                Plaintiffs,          )
                                     )
        v.                           )      Civil Action No. 05-433
                                     )      CHIEF JUDGE AMBROSE
METROPOLITAN LIFE INSURANCE           )
COMPANY, a New York Corporation,     )
                                     )
                Defendant.           )

**OPINION AND ORDER**

This is an action initiated by three named members of a putative class of persons who purchased MetLife insurance policies. Plaintiffs allege that MetLife issued insurance policies insuring plaintiffs' minor children and/or grandchildren and that the contracts provide that the policies are "non-smoking" (Docket #1, ¶¶ 71-80). MetLife is said to have breached the contracts with plaintiffs, and to have misled plaintiffs, by treating the non-smoking policies for underwriting purposes as if they were policies issued to smokers (_Id._). This is alleged to have resulted in lower dividends paid by MetLife on some of the policies, and an increased cost of insurance charged on policies which did not qualify for dividends (_Id._).

MetLife initially moved to stay proceedings in this case (Docket #9) pending a decision on its motion seeking to enforce a settlement agreement (Docket #11).  The motion to enforce is premised upon the Class Settlement and Release entered in the Multi-District Litigation ("MDL") In re Metropolitan Life Ins. Co. Sales Practices Litig., Misc. Docket No. 96-179, MDL 1091 (W.D.Pa. Dec. 28, 1999)("In re MetLife" or "MDL Settlement"), and is addressed to the claims made by named plaintiff Saul Ross.  MetLife asserts that plaintiff Ross's individual and class claims are barred by the release in the prior class action.  MetLife, by separate motion, seeks dismissal of the claims made by all plaintiffs in this case (Docket #15).  Plaintiffs have responded to both motions (Docket #s 44-46) and they are now ripe for disposition.  For the reasons that follow, the Court will grant the motion to enforce in part and will deny the motion to dismiss in its entirety.

**1.    The complaint.**

Plaintiff Ross owns 8 "Life 95" insurance policies, each with a face amount of $100,000.00.  These policies insure the lives of his grandchildren (Docket #1, ¶41).  The policies were issued during the Class Period identified in the In re MetLife consolidated

- 2 -

class settlement, and were issued to Ross in Pittsburgh, Pennsylvania (Id., ¶8).

Plaintiff Jeanette J. Andrews owns two "Life Paid-Up at Age 95" life insurance policies for her child and grandchild, respectively (id., at ¶46). These policies were issued after the class period, and were purchased in Georgia (Id., ¶¶ 9, 46-47).

Plaintiff Artralia Andrews owns two "Life Paid-Up at 98" insurance policies on the lives of her child and grandchild, and these policies were also issued after the class period and in Georgia (Id., ¶¶ 11-17).

The complaint alleges that all of the policies at issue were based upon applications, filled out by the plaintiffs, which included questions concerning the child/insured's tobacco use (Id., ¶75). In each instance, the plaintiffs answered the question posed in the applications by indicating that the insured had not used tobacco products, i.e., the insured was a "non-smoker" (Id.). The applications are, pursuant to the express terms of the insurance policies, made part of the insurance contract and, in plaintiffs' view, this makes the "non-smoking" answers part of the contract. It is further alleged that MetLife nevertheless utilized underwriting criteria for the policies which assumed that all of the juveniles would use tobacco by the time they reached the age of majority. It

- 3 -

is alleged that MetLife's solicitation and acceptance of information concerning the juveniles' tobacco use constituted a representation by MetLife that "non-smoker" risk classifications would be used with respect to those policies (Id., ¶¶44, 49, 54). MetLife's failure to use such risk classifications is, it is alleged, both a breach of contract and misleading (Id.). MetLife's decision to apply the "smoker" rate classification as opposed to a "non-smoker" rate classification resulted in either lower dividends or higher costs of insurance with respect to the insurance policies issued to plaintiffs (Id., ¶79).

The claims made by Plaintiffs are: Breach of Contract (Count One); Breach of Fiduciary Duty (Count Two); Fraud (Count Three); and Unjust Enrichment and Constructive Trust (Count Four). Plaintiffs also seek to represent a class including all persons who purchased a juvenile term or permanent life insurance policy who, at the time the policy was purchased, identified the subject of the policy as a "non-smoker" (Id., ¶61).

## 2.   The Motion to Enforce the Class Settlement.[1]

---

1.   The Motion to Enforce Settlement filed by MetLife is addressed only to the claims made by Plaintiff Saul Ross, and to any class claim for policies purchased during the Class Period identified in the In re MetLife settlement, i.e., policies
(continued...)

MetLife seeks to enjoin the claims made by Plaintiff Ross pursuant to the Class Settlement and Release entered by this Court in December, 1999 in In re MetLife. The Final Order in the prior class action dismissed all claims made by members of the Settlement Class, and a "Release and Waiver" was entered into which provides a broad waiver of claims with respect to "Released Transactions." The Stipulation of Settlement contains the relevant definition:

> 75.    "Released Transactions" means any and all claims arising out of, concerning, or in any way relating to the marketing, solicitation, application, underwriting, issuing, pricing, charging, rates, acceptance, sale, purchase, operation, retention, administration, serving or performance of any Policy; and any and all claims arising out of, concerning, or in any way relating to the matters alleged in the Complaint and Amended Complaint.

(Docket #11, Exhibit D, §II, ¶75). Further, the Release expressly applies to any and all claims which either were raised in the MDL action, or could have been raised therein, "on the basis of, connected with, arising out of, or related to, in whole or in part, the Policies" covered by the Settlement (Id., Exhibit C, ¶12.A.1).

MetLife. The Release is intentionally broad and appears applicable to the claims made by Plaintiff Ross since each of his policies was purchased and issued during the Class Period and were Class Policies under the Settlement. The Class in In re MetLife was defined as "all persons and entities who have or had an ownership interest in any permanent life insurance policy or any annuity issued by MetLife . . . during the period from January 1, 1982 through December 31, 1997 pursuant to an individual sale." (Docket #11, Exhibit B,

---

1.(...continued)

purchased prior to December 31, 1997.  Thus, the Settlement Agreement and Release in In re MetLife do not bar the claims made by Plaintiffs Jeanette and Artralia Andrews since they purchased their policies in 2000 and 2001, respectively, long after the end of the Class Period.  Nor does MetLife seek to bar any class claims for policies which issued after the Class Period ended on December 31, 1997.  Instead, MetLife has moved to dismiss the individual and class claims made by the Andrews on other bases contained in MetLife's Motion to Dismiss, which will be addressed below.

at 10). Here, the eight policies purchased by plaintiff Ross were issued between July 19, 1990, and December 20, 1993 (Docket #1, ¶41(a-h)). Further, Ross received Class Notice with respect to all eight of his policies, did not opt out of the Class. Indeed, he was ultimately awarded relief under the Settlement with respect to six of his policies (Docket #11, Exhibit G). Ross now seeks to make claims concerning these same policies on the basis of the alleged "Juvenile Policy Smoker Rate Scheme" described above.

Ross makes several arguments concerning the efficacy of the Release. They will be address seriatim.

### a.    The "Independently Arising" Exception.

Ross asserts that his claims arise independently of the claims made in the MDL Settlement and, accordingly, are not barred by the Release. The relevant portion of the Release follows:

> 2.    Nothing in this Release shall be deemed to alter . . . (b) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances arising after the end of the Class Period . . ..

(Docket #11, Exhibit C, ¶12.A.2(b)). Further, it should be noted that there was no specific claim in the Consolidated Class Action Complaint or the Amended Complaint in the MDL action which may fairly be said to encompass claims, like that made by Plaintiff Ross here, concerning the "Juvenile Policy Smoker Rate Scheme."

It is the court's first task, then, to determine whether the broad waiver and release entered in the MDL action is effective against the claims now articulated by Mr. Ross. If so, the Court must then determine whether the exception for "acts, facts or circumstances arising after the end of the Class Period" applies in this case.

Although no claim was made in the Consolidated Class Complaint which mirrors the claim now made by plaintiff Ross, MetLife urges the court to bar Mr. Ross's claims on the basis that a settlement agreement and release may be broader than the claims actually asserted in the underlying class action (Docket #1023 at 21). MetLife cites to Third Circuit precedent explaining that class settlements "can bar later claims based on the allegations underlying the claims in the settled class action . . . even though the

precluded claim was not presented, and could not have been presented, in the class action itself." In re Prudential, 261 F.3d 355, 366 (3d Cir. 2001). This rule promotes judicial economy by permitting "comprehensive settlements" which can then foreclose further litigation on the "'settled questions at the core of the class action'" Id., quoting Grimes v. Vitalink Commun. Corp., 17 F.3d 1553, 1563 (3d Cir. 1994).

The question here, then, is whether **all** claims arising with respect to a policy issued during the Class Period are barred. In ruling on the scope of the Settlement and Release, the court is guided by the Third Circuit's opinion in In re Prudential, and specifically that portion of the opinion in which the claims of class members Mr. and Mrs. Lowe are addressed. The Lowes owned several insurance policies which qualified for class relief. They opted out of the settlement with respect to some policies, but took class relief with respect to the remaining policies. The Lowes then filed suit in Florida state court asserting claims with respect to their opt-out policies. Prudential moved for an injunction, asserting that the Lowe's claims were barred by the fact that they accepted class relief with respect to the insurance policies which they had not opted out of the class settlement (referred to as the "Class Policies" in the opinion).

Initially, the Third Circuit noted the ability of class settlements to bar later claims even though the claims could not have been presented in the class action itself. The court then engaged in a detailed review of the language used in the release, which was broad and inclusive. Finally, the court reached the following conclusion:

> **The Class Policies constitute Released Transactions and the Lowes do not argue to the contrary. Accordingly, the Lowes clearly released Prudential from any claims "based on," "connected with," "arising out of," "or related to, in whole or in part" their two Class Policies.** Inasmuch as the Class Release was expressly incorporated into the Final Order and Judgment, see 962 F.Supp. at 564, 566, it has both claim preclusive and issue preclusive effect, and class members were specifically advised of this. **The Class Release also precludes class members from relying upon the common nucleus of operative facts underlying claims on the Class Policies to fashion a separate remedy against Prudential outside the confines of the Released Claims.** Consequently, the Lowes, as class members on two Class Polices, are precluded from using the sales practices and factual predicates pertaining to their Class Policies in their state court action on the Excluded Policies.

261 F.3d at 366-67 (bold emphasis added). Thus, the Lowes released all claims premised upon the policies which they did not opt out of the settlement. The decision to remain a

part of the settlement class for purposes of two of their policies prevented the Lowes from using any evidence related to the settlement to pursue claims related to policies which they had opted out of the settlement.

In this respect, the Court of Appeals found dispositive the fact that the Lowes were actually parties to the settlement and, thus, the broad Release was binding upon them:

> When the Lowes reviewed the Release and the Class Notice, they surely must have realized that, even though they could exclude certain policies from the settlement while including others, doing so would jeopardize their ability to prove claims relating to the [opted-out] Policies. The district court was not willing to release them from their bargain; neither are we.

Id., at 369. A release in a class action may, therefore, impose strict limitations on a class member's ability to litigate related claims, even where the class member indicates his or her intent to remove at least some of his claims from the class settlement. Compare, Drelles v. MetLife, 357 F.3d 344 (3d Cir. 2003)(Class members who opted out of settlement entirely cannot be enjoined from discovering or presenting evidence concerning claims made in the class action).

Here, the court is not faced with an opt-out issue. Thus, the fact that plaintiff Ross is not "relying upon the common nucleus of operative facts underlying" the Class Settlement since the "Juvenile Policy Smoker Rate Scheme" was not part of that litigation is irrelevant[2]. Although there was no claim raised by the Consolidated Class Action Complaint in In re MetLife which called into question the rating class given to term policies on the lives of minors on the basis of their smoking status, nor was there any

---

2.   MetLife argues that discovery in the MDL Action revealed information concerning MetLife's rate classifications for juveniles, and that this should be sufficient for the Court to conclude that the claim now made was "known or knowable" at the time of the Settlement. Plaintiffs have presented evidence of concealment, however, and, accordingly, the Court will not impute knowledge of this claim to the Class for purposes of the Release. Nonetheless, the issue is the scope of the Release, and the fact that a claim wasn't known at the time of the Release does not necessarily make the Release inapplicable.

claim that the yearly decisions setting the dividends or rates charged were improper, the issue is not whether the precise claim was raised.  The issue is whether Ross may be held to the terms of the Release which bars **any** claims on Class Policies.

The Release in In re MetLife specifically includes claims which could have been made, even if they were unknown at the time of the Settlement.  Ross took Class Relief with respect to six of his policies, and was a member of the Class with respect to all eight policies.  Therefore, he is bound by the Release, and as Prudential teaches, the Release may apply to claims which were not specifically raised in the Consolidated Class Action. In re Prudential, supra; Compare, In re General American Life Insurance Company Sales Practices Litigation, 357 F.3d 800, 805 (8th Cir. 2004)(not unfair to class settlement to bar claims "somewhat broader" than those specifically pleaded).  The manner in which such preclusion applies was explained in In re Diet Drugs as follows:

> The decision of a potential settlement class member to remain with the class or to opt out entirely at the threshold is a fateful one. The average class member has had no hand in negotiating the terms of the settlement. As demonstrated in Prudential I, the settlement's preclusive effect may be broad and strict. By waiving an initial opt-out, the class member surrenders what may be valuable rights, in return for countervailing benefits. In this case, important information for these potential class members included the availability, benefits, and disadvantage of the intermediate opt-out right.

> This opt-out choice raises a significant issue of fairness. As in Georgine v. Amchem Prods., the individual class members here have claims "that frequently receive huge awards in the tort system." 83 F.3d at 633. They can hardly knowingly waive some of their tort rights without a clear notice of what they are waiving. They may be entirely dependent on the class notice for this information. That is why we paid careful attention to the language of the class notice, which detailed the extent of the released claims, in upholding the injunction that enforced the preclusive provisions of the settlement in Prudential I. 261 F.3d at 366-67.

> It follows that the preclusion language in the Diet Drugs class notice and settlement agreement must, in order to avoid due process concerns, be strictly construed against those who seek to restrict class members from pursuing individual claims.

In re Diet Drugs, 369 F.3d 293, 308 (3d Cir. 2004); In re General American, supra (basing preclusion on scope and clarity of Class Notice).  The efficacy of the Release is, accordingly, reliant upon the adequacy of the notice given to the class concerning the rights which were being waived.

In this case, plaintiff Ross does not assert that the Class Notice was deficient. In fact, a copy of the actual Release was appended to the Notice (Docket #11, Exhibit D at 42; Exhibit F). The Release defined "Released Transactions" to include any claim premised upon the underwriting, pricing, charging, servicing or performance of a Class Policy (Id., Exhibit F, Appendix A at ¶T). Further, the Release goes on to state that "Class Members hereby expressly agree that they shall release and discharge [MetLife] from and any and all claims or causes of action, – known or unknown – that were or could have been asserted in this action with respect to Policies . . . and the Released Transactions . . ." (Id., at II.A). The Release explicitly applies to every manner of claim related to the Class Policies, including claims like those made here that they were sold, marketed or serviced premised upon a "Juvenile Policy Smoker Rate Scheme." The Class Notice unmistakably informed Class Members, including Plaintiff Ross, that he was waiving all possible claims arising during the Class Period, as his claims did.[3] Thus, the Release applies to his claims and bars them absent application of an exception contained within the Release itself.

The "independently arises" language in the release applies only to claims flowing from "acts, facts or circumstances arising after the end of the Class Period." (Docket #11, Exhibit C, ¶2(b)). As noted above, the asserted sale, marketing and

---

3. The Court is not persuaded by Plaintiff Ross's claim that he is not challenging actions occurring within the Class Period but, instead, that he is challenging the yearly decisions of MetLife which set the charges for his policies. Thus, he asserts, his claims arose after the Class Period and are not barred. First, the same yearly events, i.e., setting charges or dividends, occurred during the Class Period. Second, the setting of the actual rates or charges were the result of the initial sale and classification of the policies, which also occurred during the Class Period. The MDL Settlement involved millions of class members and compensation to the Class valued at more than $1.7 billion. A Class Member should not be permitted to plead around a broad Release and Waiver negotiated in a complex lawsuit merely by asserting that some facts associated with his claim occurred outside of the Class Period.

classification of Ross's policies occurred within the Class Period, as did several of the yearly decisions by MetLife to set the actual costs associated with the policies. Accordingly, plaintiff Ross's claims do not qualify for the "independently arising" exception. The same conclusion must apply to any class claim made with respect to persons whose policies were issue prior to December 31, 1997.

### B.   The Unknown Claim Exception.

Ross also asserts that he is entitled to the "Unknown Claim Exception" which is set forth in the Release. The exception is set forth below at length, with the language Ross relies upon in bold type:

> 5.   In connection with this Release, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the matters released herein or with respect to their Policies for acts, facts, circumstances or transactions occurring or arising during the Class Period. Nonetheless, it is the intention of Plaintiffs and Class Members in executing this Release fully, finally and forever to settle and release all such matters, and all claims relating thereto, that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to their Policies; provided however, that **nothing in this Release shall prevent a Class Member from submitting a claim in Part VIII of Claim Evaluation based on facts arising out of or relating to the administration or servicing of a Policy after its purchase (not including, matters described in subsections A.I(a)-(d) above), so long as the Class Member did not discover the facts forming the basis of the claim - and could not, with reasonable care, have discovered them - before the deadline set in this Agreement for mailing the Election Form.**

(Docket #11, Exhibit C at ¶12.A.5)(bold type added). Ross asserts that this permits him to file a lawsuit on a claim which he could not have, through reasonable diligence, discovered prior to the deadline for filing an Election Form under the MDL Settlement, which was December 10, 1999.

Plaintiff, however, concentrates on the latter part of the exception, and ignores entirely the first part. In the paragraph preceding the actual exception language, the parties clearly evince an intention that Class Members are waiving all unknown claims, whether discoverable during the Class Period or not. To this general and broad waiver is

appended a single exception which, far from permitting the filing of a lawsuit, speaks only to permitting a Class Member to pursue Claim Evaluation under the Settlement for claims "arising out of or relating to the administration or servicing of a Policy." There is no support in this provision for the proposition that the parties intended a broader exclusion, i.e., there is nothing to indicate that the parties intended to permit members of the class to do anything more than to pursue remedies under the Settlement Agreement and through the Claim Evaluation process created thereunder if an issue arose concerning the servicing or administration of a Class Policy.   Thus, the claims presently made by Plaintiff Ross in this Court are not excepted from the Release on this basis. This argument against application of the Release is unavailing.[4]

### C.   Does the Release apply to the "insureds"?

Lastly, Plaintiff Ross argues that the Release applies only to the owners of the policies and not to the persons "insured" under the policies. Hence, in Plaintiff's view, even if Saul Ross as the owner of the policies is barred by the Release from suing, suit may be filed on behalf of the persons insured.

---

4.   Both MetLife and Plaintiff Ross assert in alternate arguments that Ross may or should be permitted to take his claim to Claim Evaluation pursuant to the terms of the Settlement Agreement. Ross indicates in his most recent filing that the Claim Evaluation process has been disbanded and, accordingly, would be ineffectual. Ross notes that this Court retained the power to administer the Settlement and, accordingly, asserts that the Court should adjudicate his claims since the Claim Evaluation process is now defunct.   Having determined that the "unknown claim" exception is limited by its terms to permitting access to the Claim Evaluation process, the Court has ruled upon the only question properly before it.   The Court expresses no opinion on how this may be accomplished, or whether it is even possible to accomplish, at this point. What is clear, however, is that the parties did not agree to an exception to the general Release which would permit "unknown claims" arising from Class Policies to be sued upon in this, or any other, court.

- 12 -

This distinction between the owner and the insured was recognized by a Michigan court in the context of applying a class action release in a case entitled Dickshott v. Angelocci, 2004 WL 1366001 (Mich. App., June 17, 2004). In that case, Mr. Dickshott was trustee of the Dorothy Ann Kawaelde Trust Agreement and, in that capacity, was the owner of a "second-to-die" insurance policy on the lives of Manfred and Ann Kawaelde in a face amount of more than $4 million. The policy was intended to defray the estate taxes on Mr. Kawaelde's tool and die business when ownership of the business eventually passes to his daughter Dorothy Ann. The agent who sold the policy represented that a single payment of $300,000 was all that was necessary to keep the policy in force perpetually. In fact, the single payment was sufficient to pay the premiums for only five years. At about the same time that Dickshott became aware of his claims, two class actions were filed against the insurer, CIGNA, based upon similar misrepresentations. The class actions were consolidated and ultimately settled. Dickshott, as trustee, took class relief through a resolution process much like the procedures used in this case, and was awarded a sum of $3,000. In agreeing to the resolution process available under the class settlement, Dickshott as the owner of the policy agreed to release all liability for misrepresentations both for CIGNA and its agents.

Suit was thereafter filed by the Kawaeldes (father, mother and daughter) against the insurance agent and his company (but not against CIGNA) for the alleged misrepresentations leading to the purchase of the policy. Dickshott was not a named plaintiff in this action. The trial court nonetheless granted summary judgment on the basis that the class settlement barred relief. The ruling was reversed on appeal. The Michigan appellate court concluded that the settlement class, as defined in the settlement agreement, included only the owners of the policies and not the persons insured thereunder. The release, too, expressly reached only potential claims made by the owner. The court concluded that the Kawaeldes could maintain suit against their insurance agent for the misrepresentations made to induce the sale of the policy even though the Trustee, as owner of the policy, had already been granted relief under the class action settlement. Plaintiff Ross asserts that the same analysis applies here. I disagree.

- 13 -

First, the decision at issue was made under Michigan law and is not applicable here.  Further, and in any event, the named plaintiff in this case is Saul Ross, and he is alleged to be the owner of the policies at issue.  None of the persons insured under the policies are named as plaintiffs.  Further, the proposed class is said to consist only of "owners" of such policies.  Thus, unlike the Dickshott case, the persons insured under the policies have not attempted to institute litigation on their own behalf.  And, even if Ross attempted to sue on behalf of his grandchildren, the Release in In re MetLife, apparently unlike the release in the Dickshott case, explicitly prevents him from instituting suit on anyone's behalf with respect to Class Policies (Docket #11, Exhibit C at 8)[5].

The claims made by plaintiff Ross are barred by the Release.  The complaint will be dismissed with respect to his individual claims and with respect to any class claims premised upon policies issued during the Class Period.[6]

### 3.    The Motion to Dismiss.

MetLife also moves to dismiss the claims made by all plaintiffs.  A motion to dismiss pursuant to Rule 12(b)(6) cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  The issue is not whether the plaintiff will prevail at the end, but whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The complaint must be read in the light most favorable to the plaintiff

---

5.    The court does not by this conclusion adopt the analysis of the Dickshott court, nor does it rule that the distinction between owners and insureds is relevant for purposes of applying the Release and Waiver in this case.  The court holds only that no claims are made by the persons insured under the Policies and that the Dickshott analysis is irrelevant.

6.    MetLife's motion to stay (Docket #15) pending resolution of the motion to enforce the settlement has thus been rendered moot.

- 14 -

and all well-pled material allegations in the complaint must be taken as true. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

## A.   Breach of Contract (Count I).

MetLife asserts that plaintiffs have failed to identify any contractual provision which has been breached.  Indeed, it is argued, the representations made in the applications concerning use of tobacco products are, under both Georgia and Pennsylvania law, representations made by the applicant and not warranties. Ga. Code Ann., §33-24-7; 40 Pa.S.A. §512a.   The cited statutes, however, deal with the effect of the applicant's representation should it be determined to be inaccurate.  Neither statute prevents the terms of an application from becoming part of the contract of insurance, which is what plaintiffs allege in this case.  In fact, MetLife cites to <u>Couch on Insurance</u> for the proposition that "a representation is a collateral matter which induces the execution of the contract of insurance, and does not **ordinarily** become a term of the contract itself . . .." and also that a representation is not a part of the contract **unless it is otherwise stipulated**."  6 <u>Couch on Insurance</u> 3d §85:1 (emphasis supplied).  Here, plaintiffs specifically allege that the application **has** become part of the contract by the express agreement of the parties.  Thus, the fact that applications are normally representations and not contractual terms is irrelevant for purposes of this motion to dismiss where plaintiffs have pleaded that the application answers became part of the contract itself.

MetLife also argues, however, that the tobacco answers in the application, even if made part of the contract, do not constitute a promise on the part of MetLife to apply any specific rating classification.  Rather, MetLife asserts that the rate classification actually applied, a "standard" classification, was identified in the contracts and, hence, the application of that classification, rather than a non-smoking classification, is not a breach of any contractual term.  Plaintiffs respond that the contractual term which has been violated consists of their "reasonable expectation" that their policies would be treated as "non-smoker" policies.

Under both Pennsylvania law and Georgia law insurance contracts are interpreted to include terms reflecting the "reasonable expectations" of the insured. <u>Collister v. Nationwide Life Insurance Co.</u>, 479 Pa. 579, 388 A.2d 1346 (1978); <u>Richards v. Hanover Insurance Co.</u>, 299 S.E.2d 561 (Ga. 1983).  The Court of Appeals for the Third

Circuit has described the effect of the doctrine of reasonable expectations under Pennsylvania law as follows:

> where the insurer . . . creates in the insured a reasonable expectation of coverage . . . an insurer may not make unilateral changes to an insurance policy unless it both notifies the policyholder of the changes and ensures that the policyholder understands their significance.

UPMC Health System v. Metropolitan Life Insurance Co., 391 F.3d 497, 503 (3d Cir. 2004). Georgia law appears to follow the same course. Richards, supra.

Plaintiffs allege that, having been asked in their applications if the insured was a non-smoker, and representing that this was so, and, further, having the application made part of the contract, MetLife has created a reasonable expectation that the policies would be treated as non-smoking policies. It is further alleged that MetLife, having raised this reasonable expectation, applied the equivalent of a "smoker" classification to the policies, thereby charging higher costs and issuing lower dividends than if they had treated the policies as non-smoking policies.

MetLife recognizes that the reasonable expectation doctrine can modify the express terms of an insurance policy, but notes that Pennsylvania cases limit its application to coverage issues. Tonkovic v. State Farm Mutual Automobile Insurance Co., 521 A.2d 920, 924-26 (Pa. 1987); Collister, supra. MetLife argues that the doctrine is applicable only where terms concerning expected coverage are at issue, as opposed to disputes like those raised here which center upon other contractual terms such as the cost of coverage or the amount of dividends to be issued a participating policy. While MetLife's argument appears to be an accurate statement of the law as reflected in Pennsylvania caselaw, the import of the Pennsylvania decisions identified by MetLife, the Court of Appeals for the Third Circuit has applied the doctrine more broadly.

For example, the issue in the UPMC case was whether a two year rate guarantee for certain coverage was enforceable under the reasonable expectations doctrine. The Court of Appeals, reversing the lower court, found that it was. Likewise, in Tran v. Metropolitan Life Insurance Company, 408 F.3d 130 (3d Cir. 2005), the Court of Appeals cited Pennsylvania cases which apply the doctrine of reasonable expectations to coverage issues, but then applied it to a situation involving the cost of the insurance nonetheless:

- 17 -

> Although our case does not involve coverage issues, we nonetheless believe that the <u>Tonkovic</u> distinction is useful, as Tran did not receive the premium structure he anticipated just as the policyholders in <u>Tonkovic</u> . . . did not receive the coverage they anticipated.

<u>Id</u>., at 137. This court is bound to apply the law as the Court of Appeals has done. Here, even though the issue involves the cost of insurance rather than the extent or existence of coverage, the reasonable expectations doctrine may apply. <u>UPMC</u>, <u>supra</u>; <u>Tran</u>, <u>supra</u>.

Application of the reasonable expectations doctrine is a fact-intensive inquiry inappropriate for resolution in a motion to dismiss. <u>Compare</u> <u>Tran</u>, <u>supra</u> (reasonable jurors could find that insured's reasonable expectations that policy premiums would "vanish" after a period of time prevailed even if those expectations were contradicted by policy language); <u>I-Frontier, Inc. v. Gulf Underwriters Insurance Company</u>, 2005 WL 1353614 at *5 (E.D.Pa. 2005)(recovery under theory involving application of reasonable expectations doctrine is "at the very least a fact-intensive inquiry"). Therefore, MetLife's motion to dismiss the breach of contract claim must be denied.

### B.    Fraud Claim (Count III).

MetLife also seeks to dismiss the claim for fraud asserting that no misrepresentation was made, and that plaintiffs have, in any event, failed to plead with specificity. Plaintiffs respond that they are asserting constructive fraud premised upon MetLife's breach of the duty to apply a non-smoking rate classification. This claim, like the breach of contract claim, involves a fact-intensive inquiry since it requires application of the reasonable expectations doctrine to determine if, in fact, the non-smoking rate classification was part of the contract between the parties. The motion to dismiss will be denied in this respect, as well.

### C.    Unjust Enrichment (Count IV).

MetLife moves to dismiss the unjust enrichment claim on the basis that such a claim is inappropriate where a plaintiff also makes a claim premised upon an express contract. Plaintiffs respond that they are pleading in the alternative. They are permitted to so plead, and this claim also will not be dismissed at this point.

- 18 -

### D.    Fiduciary Duty Claim (Count II)

MetLife lastly seeks to dismiss plaintiff's claim for breach of fiduciary duty.    Specifically, plaintiffs allege that MetLife, in applying a smoking rate classification to the policies, breached its duty to comply with the contract provisions (Plaintiff's Brief in Opposition at 13).    In this respect, plaintiffs rely upon <u>Rider v. The Fidelity and Casualty Company of New York</u>, 26 D&C 2d 627 (1961) for the proposition that a duty of good faith and fair dealing is owed under an insurance contract, and that this can be the basis for a breach of fiduciary duty claim.    The scope of Pennsylvania's application of fiduciary duties to insurance companies was explained in <u>Belmont Holdings Corp. v. Unicare Life & Health Ins. Co</u>, 1999 WL 124389 (E.D.Pa., 1999):

> Under Pennsylvania law, "[t]he mere fact that an insurer and an insured enter into an insurance contract does not automatically create a fiduciary relationship." <u>Connecticut Indemnity Co. v. Markman</u>, No. 93-799, 1993 WL 304056, at *5 (E.D.Pa. Aug. 6, 1993).    However, Pennsylvania courts and federal courts interpreting Pennsylvania law have found that insurers assume fiduciary relationships with their insureds when an insurer asserts a stated right under a policy to handle all claims against its insured. <u>Connecticut Indem. Co. v. Markman</u>, No. 93-799, 1993 WL 304056, at *5 (E.D.Pa. Aug. 6, 1993); <u>Gedeon v. State Farm Mutual Automobile Ins. Co.</u>, 188 A.2d 320, 322 (Pa.1963); <u>Strutz v. State Farm Mutual Ins. Co.</u>, 609 A.2d 569, 571 (Pa.Super.Ct.1992).    Belmont primarily rests its breach of fiduciary duty claim on the idea that Unicare breached its fiduciary duty by not acting in good faith under the insurance policy.[footnote omitted] (Compl.¶ 30.) Although the duty of good faith and fair dealing closely resembles the duty owed by a fiduciary, Pennsylvania law does not establish a fiduciary duty based on the duty of good faith and fair dealing. <u>Connecticut Indem. Co. v. Markman</u>, [<u>supra</u>], at *6. A breach of fiduciary duty may give rise to a claim for a breach of contract. <u>Id</u>.    Accordingly, to the extent the relief requested in Belmont's Complaint is based on Unicare's failure to act in good faith under the insurance contract, the court will dismiss the breach of fiduciary duty claim as redundant of Belmont's claim for breach of contract. <u>See</u> <u>Garvey v. National Grange Mut. Ins. Co.</u>, No. 95-0019, 1995 WL 115416, at *4 (E.D.Pa. Mar. 16, 1995)(dismissing breach of fiduciary claim where plaintiff's allegations amounted to breach of contract claim based on good faith and fair dealing); <u>see also Ingersoll-Rand Equip. Corp. v. Transportation Ins. Co.</u>, 963 F.Supp. 452, 453-54 (M.D.Pa.1997) (dismissing breach of fiduciary claim that was essentially contractual in nature); <u>Greater New York Ins. Co. v. North Ins. Co.</u>, 872 F.Supp. 1403, 1409 (E.D.Pa.1995), <u>aff'd</u>, 85 F.3d 1088 (3d Cir.1996) (stating "[t]he Pennsylvania Supreme Court treats the breach of contractual duty of good faith and breach of fiduciary duty synonymously in the context of insurance cases")(citation omitted).

<u>Id</u>., at *4.  I agree with this analysis.

- 19 -

The fiduciary duty claim in this case is subsumed within the breach of contract claim because it is dependent upon a finding that MetLife had a contractual duty to apply a non-smoking rate classification to the policies.  Thus, this claim will be dismissed as being redundant of the contract claim in Count I.

An appropriate order follows:

AND NOW, this _18th_ day of ~~~~~~~~ January, 2006

IT IS HEREBY ORDERED that defendant's Motion to Stay (Docket #9) is DENIED AS MOOT; that defendant's Motion to Enforce Settlement Agreement (Docket #11) is GRANTED in that the claims of plaintiff Saul Ross are DISMISSED as are class claims with respect to any insurance policies issued during the Class Period in In re MetLife; and that defendant's Motion to Dismiss _(Docket No. 15)_ is GRANTED with respect to Count IV, but is DENIED in all other respects.

DONETTA W. AMBROSE
UNITED STATES DISTRICT JUDGE

cc: Counsel of record.

- 20 -