IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAUL ROSS, JEANETTE J. ANDREWS and ARTRALIA B. ANDREWS, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> -vs-<br><br>METROPOLITAN LIFE INSURANCE COMPANY, a New York corporation,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-433<br>)<br>)<br>)<br>)<br>)<br>) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

In this civil action, Plaintiffs allege that Defendant issued insurance policies insuring Plaintiff's minor children or grandchildren, based on policy applications indicating that the proposed insureds did not use tobacco products. Plaintiffs allege, <u>inter alia</u>, that in breach of an agreement between the parties, Defendant treated the policies as "smoker-based," in terms of calculating the premiums charged and dividends issued.

Pending before the Court are the parties' Cross-Motions for Summary Judgment, which both seek judgment on the breach of contract claim, as well as other claims. Also pending is Plaintiffs' Motion for class certification of the breach of contract claim. Because the Motion for class certification hinges on the breach

of contract claim alone, and trial is relatively near, this Opinion and Order deals with the parties' Motions as to that claim alone. I will issue an Order relating to the remainder of the Motions for Summary Judgment in due course.

For the following reasons, Plaintiff's Motion for Summary Judgment will be denied in part, and Defendant's Motion for Summary Judgment granted in part, to the extent that they relate to the claim for breach of contract. The Motion for Class Certification will therefore be denied as moot.

I. FACTS

Unless otherwise stated, the following facts are undisputed.

Plaintiffs are the owners of whole life insurance policies on the lives of their children and grandchildren, ages thirteen, eight, three, and six months at the time the policies were issued. Prior to purchasing policies, Plaintiffs completed applications for each policy. These applications were standard forms, and are not unique to juveniles. The applications asked various informational and medical questions about the insured. For instance, the application asks for the current employer of the proposed insured; another question asks whether the proposed insured engaged in motor sports, scuba diving, or mountain climbing. Question No. 13 of the application asked about the proposed insured's tobacco use. The Plaintiffs were not actually asked this question; instead, the sales representative simply checked "never" with respect to the subparts of that question. The answer to that question is not taken into account at all when underwriting and pricing policies issued to juveniles. Met Life offers only one, non smoker-distinct rating classification

for insureds in the pertinent age group. It does offer smoker-distinct ratings for adults. Defendant would have issued the policies in the same class in which they were issued, regardless of the answer to Question No. 13. Defendant uses a blend of smoker and non-smoker mortality in creating aggregate rates for juvenile policies.[1]

The parties agree that the application is part of the policy contract. Plaintiffs had no discussion with the sales representative regarding how Defendant calculated the premium amounts for the policies.

The policies' "Premium Schedule" sets forth the amount of the premium due each month and the length of time the premiums are payable. The "Policy Specifications" page of the policies states the age and sex of the insured, and provides that the "policy classification" is "standard." No language in either the applications or the policies promises "non-smoking" policies, or discusses a non-smoking rate; nor do the policies indicate that there will be a smoker-based premium. At the time the applications were completed, Defendant provided Plaintiffs with Consumer Privacy Notices. The Notices stated that Defendant would notify the policyholder if it could only provide coverage on a modified basis.

Plaintiff Jeanette admits that she did not pay a penny more in premiums than

---

[1]Question 13, with the box marked "never" selected on Plaintiffs' applications, appeared as follows:
**13: Tobacco use:**
   **Indicate date Proposed Insured last smoked/used:**
   **cigarettes** / ☐**never**   **cigar** / ☐**never**
   **pipe** / ☐ **never**   **smokeless tobacco** / ☐**never**

3

set forth in the premium schedules for the policies. Plaintiff Artralia similarly provided no evidence that she paid any additional premiums than the amounts set forth in her policies.

The parties agree that the express terms of the contracts between them include the policies and attached applications. The agreements provide that the "statements in the application will be representations and not warranties." The applications contain a statement, to be checked by applicants, agreeing that "My statements are the basis of any policy issued." Illustrations presented to Plaintiffs at the time of their applications stated the insured's risk classes as "nonsmoker standard." Several of Defendants' internal documents, such as underwriting and customer relations documents, identified the juvenile insureds as non-smoking. Plaintiffs did not see these internal documents at the time of contracting.

## II. APPLICABLE STANDARDS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. V. Stauffer Chem. Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of

4

judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

III. THE PARTIES' MOTIONS

Both parties seek summary judgment on the breach of contract claim. Plaintiffs argue that the application for insurance was part of the policy, that the application indicated "non-smoking" juvenile insureds, and that Defendant's treatment of the policy as "smoker-based" violated Plaintiffs' reasonable expectation that the policy would be treated as non-smoking. Plaintiffs contend that Georgia law applies here, and I will therefore apply Georgia law to their claims.[2]

Initially, Plaintiffs argue that the so-called "reasonable expectations doctrine" requires that I grant their Motion, and deny that of Defendant. This is consistent with their position that Defendant breached a contractual term created by their reasonable expectation of a non-smoking-based rate and dividend. In contrast, Defendant contends that the unambiguous terms of the policy did not require them to offer a "non-smoking" policy, and that they did not, therefore, breach the contract.

In Georgia, "insurance contracts are to be read in accordance with the

---

[2] Defendants assert that Georgia law applies to the Andrews Plaintiffs' claims, and do not address the claims of Plaintiff Ross. Plaintiffs, in turn, contend that Georgia law applies to all Plaintiffs' claims, but that there is no conflict between Georgia and Pennsylvania on pertinent issues, so I "could" apply Pennsylvania law. As I find that there is a conflict between the laws of Georgia and Pennsylvania, I will not consider Pennsylvania law here.

reasonable expectations of the insured where possible." Burgess v. Allstate Insurance Co., 334 F. Supp.2d 1351, 1359 (N.D. Ga. 2003). This rule is one of contract construction:

> "In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Accordingly, courts must enforce those provisions which are clear and unambiguous; however, "[a]ny ambiguities in the contract are strictly construed against the insurer as drafter of the document...and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible."...Obviously, the starting point for an analysis of the relationship between an insurer and its insured is the language of the contract and a determination of whether or not it is clear and unambiguous.

Hercules Bumpers, Inc. v. First State Ins. Co., No. 85-150-ALB, 1988 U.S. Dist. LEXIS 15450, at **4-5 (M.D. Ga. 1988) (citations omitted).

In other words, under Georgia law, when the language of the contract itself is clear and unambiguous, construction – and thus consideration of reasonable expectations, or construction against the drafter – is unnecessary. Capital Alliance Ins. Co. v. Cartwright, 236 Ga. App. 554, 557 (Ga. Ct. App. 1999).³ Indeed, absent an

---

³The "reasonable expectations" doctrine is quite different in Georgia than in Pennsylvania. In Pennsylvania, the doctrine is an exception to general rules of construction, and applies regardless of ambiguity. UPMC Health Sys. v. Metropolitan Life Ins. Co., 391 F.3d 497, 503-04 (3d Cir. 2004). The doctrine has been discussed, for example, in an effort to reform the contract to coincide with the insured's expectations, or as related to justifiable reliance in a fraud matter. See Solarchick v. Metro. Life Ins. Co., 430 F. Supp. 2d 511 (W. D. Pa. 2006). Plaintiffs have not pointed to any case law in which Georgia courts have treated the "reasonable expectations" principle as anything other than a rule of construction triggered by an ambiguity. I do note GE Life & Annuity Assur. Co. v. Barbour, 191 F. Supp. 2d 1375 (Md. D. Ga. 2002), a fraudulent concealment case, which referred to Pennsylvania's use of the reasonable expectations doctrine. The case, however, neither applied nor adopted the doctrine as used in Pennsylvania.

In an earlier Opinion in this litigation, I observed, without analysis, that Georgia and Pennsylvania "appear" to follow the same course with respect to an insured's reasonable expectations. This approach was appropriate at the Motion to Dismiss stage, at which neither party

6

ambiguity, contract construction is not only unnecessary, but impermissible. Great West Cas. Co. v. Buchanan Express, Inc., 3:06-CV-02, 2007 U.S. Dist. LEXIS 33261, at *6 (M.D. Ga. May 7, 2007). Rules of construction, in other words, are to be used to resolve ambiguities, and not to create them. This is consistent with Georgia's generally restrained approach towards contracts, which "emphasizes the importance of construing a contract by its terms," and in which courts "are reluctant to imply contractual terms." Bellsouth Telecomms., Inc. v. NuVox Communics., Inc., No. 1:04-CV-2790, 2006 U.S. Dist. LEXIS 65029, at **53-55 (N.D. Ga. 2006).

In order to determine whether I may consider Plaintiffs' expectations, or any other rules of construction, therefore, I must first determine whether an ambiguity exists. RLI Ins. Co. v. Highlands on Ponce, LLC, 635 S.E.2d 168, 171 (Ga. Ct. App. 2006). " 'Ambiguity' is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument...." Id. Language is unambiguous, however, if it is capable of only one reasonable interpretation. Toy Wright Ventures, LLC v. Radlo Foods, LLC, 635 S.E.2d 862, 862 (Ga. Ct. App. 2006). Unambiguous terms are given their "plain, ordinary and popular sense as supplied by dictionaries." Michna v. Blue Cross & Blue Shield of Ga., No. A07A1091, 2007 Ga. App. LEXIS 1152, at *5 (Ga.

---

made a particular argument in favor of Georgia law, and no choice of law issue was placed squarely before me. Docket No. 45, p. 6, fn. 1. In any event, the law of Pennsylvania and Georgia is, indeed, similar with respect to the broader issue identified in that Opinion –i.e., that both fora will, under certain circumstances, read an insurance policy in accordance with the reasonable expectations of the insured. Richards v. Hanover Ins. Co., 299 S. E. 2d 651, 563-64 (Ga. 1983), the case that I cited for this proposition, involved Georgia's narrower use of the principle in construing an ambiguous document; it did not apply Pennsylvania's version of the doctrine.

Ct. App. Oct. 29, 2007). The starting point for this inquiry, of course, must be the four corners of the document. Livoti v. Aycock, 590 S.E. 2d 159, 164 (Ga. Ct. App. 2003).

Even assuming that Plaintiffs' application became part of the contract here[4], Snead is wholly inapplicable. Snead represents a standard-issue case of contract construction, which is aimed at resolving obscurities in the expression of the parties' agreement. The present Plaintiffs do not contend that Defendant failed to properly frame its application question, or that the expression of the parties' agreement is unclear. Instead, they argue that Defendant failed to disclose how it would use responsive information, that extrinsic factors made Question 13 impose on Defendant a particular obligation. Plaintiffs repeatedly assert that Defendant charged them a "higher" rate, but do not assert that the rates due and agreed upon are anything other than those clearly stated in the policy. In this case, the policy language is not reasonably susceptible to more than one meaning, and is quite markedly dissimilar from that in Snead. The language at issue here is not, therefore, "ambiguous" in a legal sense. Any uncertainty relating to Plaintiff's expectations, based on words other than those contained in the policy itself, is not the type of

---

[4]Because I proceed under this assumption, protracted discussion of the "complete policy doctrine" is unnecessary. That doctrine might serve to incorporate the application into the parties' contract, but provides no independent grounds for relief. E.g., Allelman v. State Farm Life Ins. Co., No. 06-524, 2007 U.S. Dist. LEXIS 67-111 (W.D. Pa. September 10, 2007). Although Alleman rejected the doctrine's application under Pennsylvania law, I have found no pertinent authority from the Georgia courts, and Plaintiffs have pointed to none.

ambiguity contemplated by rules of contract construction.[5]

Plaintiffs also appear to contend that uncertainties arise from other phrases within the policy. For example, they point to their agreement, on the application, that their "statements are the basis of any policy issued." This language alone is not alleged to be susceptible to more than one meaning. As for the legal effect of the phrase, it is true that an insured – who, after all, is the party who makes and affirms the statements on an insurance application -- is committed thereto. <u>See</u>, <u>e.g.</u>, O.C.G.A. § 33-24-7.[6] I have found no cases, however, and Plaintiffs have not pointed to any, finding that the pertinent language can reasonably be read to obligate an insurer, without express agreement, to give a particular weight or effect to each such statement in its rate calculation method. The policy application, and the policy itself, are silent about Defendant's use of the answers, and simply do not impose a duty on Defendant to adjust rates based on those answers. <u>See</u> <u>Thompson v. American General Life and Accident Ins. Co.</u>, 448 F. Supp. 2d 885 (M.D. Tenn. 2006). That the insured's application will be the basis of the policy issued does not create any relevant uncertainties.

---

[5]Certainly, an omitted term may create an ambiguity in a document. This, however, is not the case here. In other words, the fact that the policy does not identify the rate calculation method, or expressly state that the rates are not smoking distinct, might somehow be misleading; it does not, however, render any aspect of the contract susceptible to more than one meaning.

[6]As a related matter, Plaintiffs correctly assert that a court is to avoid any construction of a contract that renders portions of the contract meaningless. This rule of construction, however, like others on which Plaintiffs rely (including the construction-in-favor-of-the-insured rule, which Plaintiffs mention in a different context), only applies in the case of an ambiguity. Moreover, this rule is implicated by the need to resolve potential disharmony within the four corners of a contract. Here, Plaintiffs do not allege any conflicting provisions. In any event, it would seem absurd to also require the converse: i.e., that even absent conflicting terms, a court must somehow make every portion of a contract "meaningful."

The final point of contention within the four corners of the document is that the word "standard" suggested to Plaintiffs a child without health concerns, including smoking. When assessing contractual terms, "[t]he natural, obvious meaning is to be preferred...." Robertson v. N.N. Investors Life Ins. Co., 192 Ga. App. 122, 122 (Ga. Ct. App. 1989). I have found no cases indicating that the word "standard" is ambiguous; certainly, it cannot, without reference to extrinsic evidence, be reasonably or naturally said to mean "non-smoking." To the contrary, it is a term with plain meaning, not susceptible to more than one meaning. The dictionary appended to our computer system defines the adjective "standard" as meaning "of no special quality." Wordperfect X3 Dictionary. Again, under all the circumstances of this case, perhaps Plaintiffs were misled; the contract, however, is unambiguous as a matter of law. To find otherwise would be to impermissibly create uncertainty, and add terms to the parties' agreement.[7]

Having found no ambiguity within the four corners of the document, I will follow the persuasive opinion issued in Thompson v. American General Life and Accident Ins. Co., 448 F. Supp. 2d 885 (M.D. Tenn. 2006). In Thompson, on her application for insurance, plaintiff answered in the negative to tobacco use. Id. at 888. The policy stated that it was "standard." Id. The policy also stated the premium due; it did not state that it was a "non-smoking" policy, or say anything about the

---

[7]The clarity of the contract has several ramifications: of course, extrinsic evidence, such as that Plaintiffs were "satisfied," or their alleged course of performance, or Defendant's internal documents, is irrelevant to the inquiry. Also, an unambiguous contract means that Defendant cannot have breached the requirement that it set forth the terms and conditions of the policy in language that an average lay insured would understand.

use of the applicant's answers in ratemaking. Id. Defendant did not offer smoker-distinct rates for juveniles, but did offer smoker-distinct rates to adults. Id. at 888. The court rejected plaintiff's argument that her response to the tobacco use question obligated Defendant to provide her a non-smoking policy, and that the policy terms had been changed from non-smoking to smoking. Id.

In doing so, the court first concluded that the terms of the policy were clear and unambiguous. Id. at 889. Applying Georgia law, the court held as follows: "Plaintiff cannot, by supplying a particular answer to an application question, obligate the insurance company to calculate its premium rate using a particular mortality assumption not set forth in the Policy or to deliver a product it simply does not offer." Id. Moreover, "Plaintiff's simply identifying the insured as a non-smoker could not and did not convert the Policy one way or the other or require Defendant to charge rates different from those set forth in the policy itself." Id. at 888.[8] It further noted that the policy had never been "changed," as plaintiff contended, because it had never been smoker distinct. Id.

This case, absent impermissible reference to parol evidence, is materially indistinguishable from Thompson. As in Thompson, the present policies indicated a "standard" classification, made no statement regarding the use of Plaintiffs'

---

[8]Plaintiff argues that Thompson, which is now under appeal, is incorrect, because Thompson misapplied the reasonable expectations doctrine. The Thompson court, however, found no lack of clarity that would have been subject to construction in accordance with the plaintiff's expectations. It also concluded that given the clear and unambiguous language of the policy, the plaintiff's expectation of a non-smoking rate was not reasonable, and therefore could not be made subject to the 'reasonable expectations" doctrine. Id. I see no misapplication of the law.

11

application statements in ratemaking, and did not identify the policies as non-smoking. Also as in Thompson, the present Defendant does not offer smoker-distinct rates for juveniles. Likewise, Defendant here did not change or modify Plaintiffs' policies; instead, it is undisputed that Plaintiffs have received the policy at the premium that they agreed to pay. As in Thompson, therefore, Defendant promised to provide particular coverage for a particular premium, and did so; there has been no breach of any promise. Plaintiff's expectations cannot change these facts.

I take separate note of Plaintiffs' argument that this case involves "far more" – in particular, the policy illustrations provided them at the time of contracting -- than the bare facts of Thompson.[9] In asking that I consider the illustrations, Plaintiffs point to the principle that instruments executed at the same time, in the course of a single transaction, should be read and construed together. This principle, however, applies to the problem of determining the effect or primacy of multiple contracts. E.g., Hardin v. Great Northern Nekoosa Corp., 229 S.E. 2d 371, 374 (Ga. 1976). Plaintiffs do not assert that the illustrations at issue constituted contracts, or that they were in any way made part of the insurance policies. Instead, they remain nothing more than parol evidence. "Although parol evidence is admissible to explain ambiguous language in a contract, it is not admissible to create an ambiguity where none exists." Perrett v. Dollard, 176 Ga. App. 829, 830 (Ga. Ct.

---

[9] I take separate note of this argument to the extent that Plaintiffs intend to suggest that the "single transaction" rule would create an exception to the bar against extrinsic evidence in this case.

12

App. 1985). The illustrations cannot be used to create an ambiguity. As a result, while they might well be relevant in some other context, I am not permitted to consider them here.

## IV. MOTION FOR CLASS CERTIFICATION

Because I have entered judgment against Plaintiffs on their breach of contract claim, their Motion for Class Certification of that claim is now moot. I will therefore deny the Motion.

## CONCLUSION

In sum, Plaintiffs have not met their burden under Rule 56. Conversely, Defendants have demonstrated that no genuine issue of material fact remains with respect to Plaintiff's breach of contract claim. The crux of Plaintiffs' claim is, in Plaintiffs' own phraseology, that Defendant mislead policyholders by secretly treating the answer to Question 13 as meaningless for juvenile insureds, and that Defendant failed to disclose the bases for ratemaking and dividends. Contrary to Plaintiffs' concerns, my Opinion today does not necessarily render Defendants' actions with respect to Question 13 unimportant; it merely makes clear that the described conduct cannot be forcibly squeezed into the legal category of contractual breach. To hold otherwise would be to create an ambiguity, in order to add a non-existent contractual obligation; this would be a fairly gross distortion of the Court's proper role. Accordingly, I will grant in part Defendant's Motion for Summary Judgment, and deny in part Plaintiff's Motions for Summary Judgment, and deny the Motion for Class Certification. An appropriate Order follows.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER OF COURT

AND NOW, this **13th** day of November, 2007, after careful consideration, and for the reasons set forth within, it is Ordered that Defendant's Motion for Summary Judgment (Docket No. 98) is GRANTED, in part, and Plaintiffs' Motion for Summary Judgment (Docket No. 94) is DENIED, in part, as stated in the preceding Opinion; the remainder of both Motions are under consideration and will be disposed of in a separate Order, in due course. Plaintiff's Motion for Class Certification (Docket No. 63) is DENIED as moot.

BY THE COURT:

/S/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge